STATE of Wisconsin, EX REL. Carl KAMINSKI, Petitioner-Appellant

v.

David H. SCHWARZ, Administrator, Division of Hearings and Appeals, Respondent-Respondent-Petitioner.

Supreme Court

*No. 99–3040. Oral argument January 5, 2001.—Decided July 9, 2001.*

2001 WI 94

(Also reported in 630 N.W.2d 164.)

312

For the respondent-respondent-petitioner the cause was argued by *William C. Wolford*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the petitioner-appellant there was a brief and oral argument by *Donald T. Lang*, assistant state public defender.

¶ 1.    DAVID T. PROSSER, J.    This is a review of a published decision of the court of appeals, *State ex rel. Kaminski v. Schwarz*, 2000 WI App 159, 238 Wis. 2d 16, 616 N.W.2d 148. The court of appeals reversed a judgment of the Trempealeau County Circuit Court, John A. Damon, Judge, affirming the revocation of Carl Kaminski's probation. The revocation was based on Kaminski's violation of two rules of probation imposed by his probation agent. The rules required Kaminski to inform his immediate neighbors of his status as a convicted sex offender, and to inform his agent before beginning an intimate relationship with another person so that the agent could ensure that the other person knew Kaminski was a convicted sex offender.

¶ 2.    After Kaminski's probation was revoked for violating these rules, the court of appeals determined that the rule requiring Kaminski to inform his immediate neighbors of his sex offender status was contrary to Wis. Stat. § 301.46 (1997–98),[1] which relates to access

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

to information in Wisconsin's sex offender registry. *Kaminski*, 238 Wis. 2d 16, ¶ 11. The court of appeals therefore remanded the case to the Department of Corrections (DOC) to determine whether Kaminski's violation of the other rule, requiring him to notify his agent before beginning an intimate relationship with another person, was sufficient to warrant revocation. *Id.* at ¶ 12.

¶ 3. The issue presented is whether the probation rule requiring Kaminski to notify his immediate neighbors that he is a sex offender is valid. We determine that Wis. Stat. §§ 301.45 and 301.46 do not occupy the field in regulating the dissemination of sex offender registration information, or prohibit a probation agent from imposing a rule requiring a convicted sex offender to notify his or her immediate neighbors of his or her sex offender status. We also find that the rule imposed on Kaminski was not unreasonable. Accordingly, we reverse the decision of the court of appeals.

## I.  BACKGROUND

¶ 4. The facts of this case are not disputed. Kaminski pled guilty to a charge of second-degree sexual assault of a child contrary to Wis. Stat. § 948.02(2), and was convicted and sentenced to ten years imprisonment on April 23, 1996.[2] The circuit court imposed

---

The sex offender registration law embodied in Wis. Stat. §§ 301.45 and 301.46 has undergone extensive revision since 1998. While we refer in this opinion to the 1997–98 statutes, we will also refer to amendments to the statutes when relevant.

[2] The victim was an eight-year-old girl. Kaminski pled guilty to having sexual intercourse with her in her home.

The Judgment of Conviction states that Kaminski pled guilty to a charge of first-degree sexual assault of a child, contrary to Wis. Stat. § 948.02(1). Kaminski was originally charged

and stayed Kaminski's sentence, and placed him on probation for ten years.

¶ 5.  As a condition of probation, the circuit court sentenced Kaminski to one year in the Trempealeau County Jail. It also imposed other conditions of probation, including prohibitions on contact with the victim of his crime and the victim's family, or with any person under 18 years of age unless the person is a family member and the contact is supervised. The court also ordered that after his release from jail, Kaminski was to report to a group home, submit to a chemical dependency evaluation, undergo treatment for suicidal tendencies, and complete sexual offender treatment, an education program, and a relapse prevention program.

¶ 6.  When Kaminski was released from jail, he was initially supervised by Tony Lessard. On June 25, 1997, Kaminski registered as a sex offender, pursuant to Wis. Stat. § 301.45.

¶ 7.  Kaminski completed sex offender treatment and inpatient alcohol and other drug addiction (AODA) treatment, but he was later terminated from an AODA residential aftercare program for rules violations.

¶ 8.  In November 1997 Kaminski's case was transferred from Trempealeau County to Chippewa County, and Ellen O'Connell replaced Tony Lessard as Kaminski's probation agent. She issued Kaminski 16 standard rules of probation, in writing. Rule 1 stated: "You shall avoid all conduct which is in violation of federal or state statute, municipal or county ordi-

---

with first-degree sexual assault of a child, but the Division of Hearings and Appeals declared in sustaining the revocation of Kaminski's probation that he actually pled guilty to second-degree sexual assault of a child.

nances or which is not in the best interest of the public welfare or your rehabilitation." Rule 16 stated:

> You shall follow any specific rules that may be issued by an agent to achieve the goals and objectives of your supervision. The rules may be modified at any time, as appropriate. The specific rules imposed at this time are stated on the back of this form. You shall place your initials at the end of each specific rule to show you have read the rule.

Five additional rules specific to Kaminski's sex offender treatment were imposed by Agent O'Connell and written on the back of the page of rules. Kaminski agreed to and signed this list of rules.

¶ 9.   In January 1998 Kaminski was charged with misdemeanor battery against his wife, [S.K.]. He entered a halfway house for substance abuse treatment, and sporadically attended an "Alternative to Abuse" program. After a restraining order was issued prohibiting him from having any contact with S.K., Kaminski was convicted of battery on March 18, 1998, and sentenced to 18 months probation. After numerous violations of the restraining order, Kaminski was returned to jail. When he was released, he returned to the halfway house, but continued to contact S.K. He was therefore discharged from the halfway house and returned to jail. At this point, Kaminski's probation on the battery conviction was revoked, and he was sentenced to nine months in jail with credit for time served.

¶ 10.   With Kaminski due to be released from the Chippewa County Jail on December 19, 1998, Agent O'Connell issued him additional rules of probation, numbered 16–1 through 16–25. These rules included a

prohibition of contact with S.K.,[3] and a requirement that he register as a sex offender, pursuant to Wis. Stat. §§ 301.45 and 301.46. Also included was rule 16–3 which stated: "You shall notify your agent of any involvement in an intimate relationship at its beginning and you shall introduce the person to your agent to disclose your past sexual offenses prior to engaging in any type of sexual activity with that person." Rule 16–25, which was handwritten, stated: "You will notify the neighbors on each side that you are a convicted sex offender by Dec. 24, 1998. You will report to your agent on Jan. 4, 1999 at 9 AM." Kaminski agreed to and signed these rules on December 18, 1998.

¶ 11.   Upon his release from jail the next day, Kaminski moved into a trailer park in Chippewa Falls. Nine days later, on December 28, 1998, Agent O'Connell was notified that Kaminski had allegedly sexually assaulted Tamala B., an Eau Claire woman, the night before. Agent O'Connell contacted Kaminski after he was taken into custody. Kaminski admitted in writing that he had sexual relations with Tamala B. without notifying his probation agent, but he denied sexually assaulting the woman. He also admitted in writing that he had not informed his neighbors of his sex offender status. When Agent O'Connell learned that Kaminski was being charged with second degree sexual assault, she initiated probation revocation proceedings, and Kaminski was transferred to the Trempealeau County Jail.

¶ 12.   Agent O'Connell filed a "Violation Investigation Report," claiming that Kaminski had violated three rules of probation. She alleged that by sexually assaulting Tamala B., Kaminski violated a statute,

---

[3] Agent O'Connell stated in the revocation summary that Kaminski was served with divorce papers in February 1998.

contrary to rule 1, and engaged in sexual relations without informing his agent, contrary to rule 16–3. Agent O'Connell also alleged that Kaminski failed to inform the neighbors immediately on either side of his trailer of his status as a sex offender, contrary to rule 16–25.

¶ 13. A probation revocation hearing was held on February 23, 1999. An administrative law judge (ALJ) heard testimony from Kaminski, Tamala B., and other witnesses, and received Agent O'Connell's "Violation Investigation Report" and revocation summary. Kaminski testified that he had sexual relations with Tamala B., but characterized the incident as consensual. He admitted that he had not first contacted his agent to assure that Tamala B. would be informed of his conviction. He also admitted that he had not told his neighbors about his status as a sex offender, but claimed that telling them was unnecessary because they did not have children.

¶ 14. On March 8, 1999, the ALJ issued a written decision, determining that Kaminski had not sexually assaulted Tamala B. but had engaged in sexual relations with her without first telling his agent, in violation of rule 16–3. The ALJ also found that Kaminski had violated probation rule 16–25 by not informing his immediate neighbors of his status as a convicted sex offender. The ALJ concluded that these two rule violations were sufficiently serious to warrant revocation of Kaminski's probation.

¶ 15. The Division of Hearings and Appeals (DHA) sustained the ALJ's decision on March 23, 1999.

¶ 16. Kaminski appealed the decision of the DHA to the Trempealeau County Circuit Court via a writ of certiorari. The circuit court affirmed the revocation of Kaminski's probation, stating that it could not "find

these rules inherently unreasonable" and could not "find that the rules were so unreasonable that the decision to revoke was arbitrary and unreasonable or beyond the law."

¶ 17.  Kaminski then appealed to the court of appeals, which reversed the circuit court judgment. *Kaminski*, 238 Wis. 2d 16, ¶ 11. The court of appeals decision focused on rule 16–25, which required Kaminski to inform his immediate neighbors of his sex offender status. *Id.* at ¶¶ 8–12. The court of appeals stated that "by enacting Wis. Stat. § 301.46, the legislature provided limitations on access to sex offender registration information." *Id.* at ¶ 11. It determined that rule 16–25 is inconsistent with Wis. Stat. § 301.46, and that a violation of the rule cannot form the basis for revocation of probation. *Id.*

¶ 18.  The court of appeals concluded that Kaminski had admitted to having sexual relations without first informing his agent, in violation of rule 16–3. It therefore remanded the case to the DOC to determine whether that single rule violation warranted revocation. *Id.* at ¶ 12.

¶ 19.  Judge Hoover dissented, asserting that nothing in Wis. Stat. §§ 301.45 or 301.46, or in the legislative history of those statutes indicates that the legislature intended "to limit the authority to impose conditions of probation that are otherwise reasonable and appropriate." *Id.* at ¶ 16 (Hoover, J., dissenting). He declared that requiring Kaminski to notify his neighbors of his sex offender status promoted the goals of rehabilitating Kaminski and of protecting the public, and was reasonable and appropriate. *Id.* at ¶ 17.

¶ 20.  This court granted the State's petition for review.

## II. STANDARD OF REVIEW

¶ 21. The issue presented in this case requires us to review a probation revocation by the DOC. Our review is therefore limited to determining:

> (1) whether the Department acted within the bounds of its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will, not its judgment; and (4) whether the evidence was sufficient that the Department might reasonably make the determination that it did.

*State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 628–29, 579 N.W.2d 698 (1998).

¶ 22. Kaminski's revocation was based on findings that he violated two rules of probation. He does not challenge these findings—he admits both violations. He instead claims that the DOC did not act according to law in imposing one of these rules of probation, and that the rule was unreasonable. Whether a condition or rule of probation is contrary to law is a question of law, which this court reviews de novo. *Id.* at 629.

¶ 23. Whether a condition or rule of probation is unreasonable is dependent on whether the condition or rule serves the dual goals of probation: rehabilitation and protection of the community. *State v. Heyn*, 155 Wis. 2d 621, 629, 456 N.W.2d 157 (1990).

## III. ANALYSIS

¶ 24. To resolve the issue in this case, we must determine whether probation rule 16–25 requiring Kaminski to inform his neighbors of his sex offender

status was either contrary to Wis. Stat. §§ 301.45 and 301.46, or otherwise unreasonable. We begin by examining a probation agent's authority to impose rules of probation.

## A. Probation Agents' Authority to Impose Rules of Probation

¶ 25. Probationers in Wisconsin are subject to court-imposed conditions of probation, as well as DOC- and agent-imposed rules of probation. Wis. Stat. §§ 973.09 and 973.10. Courts are authorized under § 973.09 to "impose any conditions which appear to be reasonable and appropriate." Wis. Stat. § 973.09(1)(a). The DOC is authorized under § 973.10(1) to establish rules and regulations for probationers, supplementing court-imposed conditions of probation.[4] In accordance with § 973.10, the DOC has developed 16 standard rules of probation that a probation agent is to explain to the probationer, and to implement. Wis. Admin. Code § DOC 328.04(3) (May, 2001).[5]

---

[4] Wisconsin Stat. § 973.10(1) provides:

> Imposition of probation shall have the effect of placing the defendant in the custody of the department and shall subject the defendant to the control of the department under conditions set by the court and rules and regulations established by the department for the supervision of probationers, parolees and persons on extended supervision.

[5] The standard rules established in Wis. Admin. Code § DOC 328.04(3) include requirements that the client:

> (a) Avoid all conduct which is in violation of state statute, municipal or county ordinances or which is not in the best interest of the public welfare or his or her rehabilitation;
>
> . . . .
>
> (L) Follow any specific rules that may be issued by an agent to achieve the goals and objectives of this chapter. The rules may be modified at any time as appropriate.

¶ 26.   The DOC also has established rules to guide probation agents in supervising probationers. Probation agents are to "provide individualized supervision of clients in a manner consistent with the goals and objectives of this chapter." Wis. Admin. Code § DOC 328.04(1). They are also expected to "attempt to help the client be successfully reassimilated into the community, help the client adjust to and cope with community living, reduce crime, and protect the public." *Id.* One of an agent's responsibilities in supervising a client is "*[e]stablishing written rules of supervision* that are supplemental to existing court-imposed. . .conditions." Wis. Admin. Code § DOC 328.04(2)(d) (emphasis added).

¶ 27.   It is undisputed that Agent O'Connell had authority to impose rules of probation on Kaminski, and that Kaminski agreed to the rules Agent O'Connell imposed. The question is whether rule 16–25, requiring Kaminski to inform his immediate neighbors of his sex offender status, is contrary to Wis. Stat. §§ 301.45 or 301.46. An administrative rule that contravenes the words of an unambiguous statute is invalid. *Seider v. O'Connell*, 2000 WI 76, ¶ 28, 236 Wis. 2d 211, 612 N.W.2d 659. For the same reason, a rule of probation imposed by a probation agent, intended to supplement court-imposed conditions of probation, may not validly contravene the directive of a statute. *See id.*

B.   Wisconsin's Sex Offender Registration Law

██

¶ 28.   Resolving this case requires us to examine and interpret Wis. Stat. §§ 301.45 and 301.46, to deter-

---

All subsequent references to the Wisconsin Administrative Code are to the May, 2001 version unless otherwise indicated.

mine whether they occupy the field regulating the dissemination of sex offender registration information or prohibit rule 16–25 in these circumstances. When interpreting a statute, we aim to discern the intent of the legislature, and to give effect to that intent. *County of Jefferson v. Renz*, 231 Wis. 2d 293, 301, 603 N.W.2d 541 (1999).

¶ 29.   We begin with the language of the statute. *State v. Piddington*, 2001 WI 24, ¶ 14, 241 Wis. 2d 754, 623 N.W.2d 528. If the statutory language is clear, we need not look beyond it to determine legislative intent. *HMO-W Inc. v. SSM Health Care Sys.*, 2000 WI 46, ¶ 19, 234 Wis. 2d 707, 611 N.W.2d 250. However, if the statute is unclear or ambiguous, *Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians*, 2000 WI 79, ¶ 17, 236 Wis. 2d 384, 612 N.W.2d 709, we may utilize extrinsic aids such as legislative history and statutory purpose for guidance. *McDonough v. DWD*, 227 Wis. 2d 271, 277, 595 N.W.2d 686 (1999). Statutory language is ambiguous if it is capable of being understood in more than one way or in more than one sense by reasonably well-informed persons. *Teague*, 236 Wis. 2d 384, ¶ 17.

1.   Language of Wisconsin Stat. §§ 301.45 and 301.46

¶ 30.   Wisconsin Stat. §§ 301.45 and 301.46 govern sex offender registration and access to information in the sex offender registry. Section 301.45 requires certain persons who have committed sex offenses or sexually motivated crimes to "comply with the reporting requirements" set forth in the statute. Wis. Stat.

§ 301.45(1).[6] A person required to register must supply information including his or her name and aliases, and physical characteristics such as date of birth, gender, race, height, weight, hair color, and eye color. Wis. Stat. § 301.45(2)(a). The person must also supply information regarding his or her conviction; supervision; and supervising agency; the addresses of the person's residence, workplace, and school; and the date the person's information was last updated. *Id.*

¶ 31. A registry of each person's information is maintained by the DOC. *Id.* The DOC is required to keep the information confidential, "except as provided in. . .[§ ] 301.46, [and] except as needed for law enforcement purposes." Wis. Stat. § 301.45(7)(a).[7]

¶ 32. Wisconsin Stat. § 301.46 governs access to information contained in the sex offender registry. It requires that the DOC notify law enforcement agencies and the interested victims of a sex offender's previous crimes. It also allows community agencies and the general public to request sex offender registry information.

---

[6] Section 301.45 applies to various persons, including those convicted of:

> any violation, or for the solicitation, conspiracy or attempt to commit any violation, of s. 940.22(2), 940.225(1), (2) or (3), 944.06, 948.02(1) or (2), 948.025, 948.05, 948.055, 948.06, 948.07, 948.08, 948.11 or 948.30, or of s. 940.30 or 940.31 if the victim was a minor and the person was not the victim's parent.

Wis. Stat. § 301.45(1)(a).

[7] Wisconsin Stat. § 301.45(7) also allows limited disclosure of information for the purposes of Wis. Stat. §§ 301.03(14), 49.22(2m), and 59.53(5). These statutes concern the release of information to the department of revenue to assist it in locating persons who have not properly filed tax returns, the department of workforce development in regards to child or spousal support obligations, and to county child support agencies, respectively. These provisions are inapplicable to this case.

¶ 33.  When a sex offender registers under Wis. Stat. § 301.45, the DOC must immediately make all the information that the registrant supplies available to the chief of police of the community and the sheriff of the county in which the person is residing, working, or attending school. Wis. Stat. § 301.46(2)(a).[8]

¶ 34.  Upon request, a victim of a registered person's crimes and members of the victim's family are also entitled to notification of information including the registered person's name and address, the agency supervising the person, and the date of the most recent update of the information. Wis. Stat. § 301.46(3)(c).

¶ 35.  Numerous agencies and organizations other than law enforcement agencies (including schools; day care providers; group homes; and the departments of justice, public instruction, and health and family services) are entitled to information about specific sex offenders upon request. Wis. Stat. § 301.46(4).[9] The DOC is required to provide to these

---

[8] Hereinafter, we use the terms "police chief" or "sheriff" to refer to the police chief of the community or the sheriff of the county in which a registered person resides, is employed, or attends school.

The DOC is also required to provide the police chief or sheriff with bulletins regarding any registrant who is about to be released from confinement if the registrant has been convicted of two or more sex offenses, or has been committed under Wis. Stat. Ch. 980. Wis. Stat. § 301.46(2m). The DOC has discretion to decide whether to issue notification bulletins prior to the release of registrants who have been convicted of only one sex offense and have not been committed under Chapter 980. *Id.*

[9] Neighborhood watch programs are entitled upon request to the names and information of all registered persons residing, employed, or attending school in the "community, district, jurisdiction or other applicable geographical area of activity." Wis. Stat. § 301.46(4)(ar).

entities the name and any aliases of a registered sex offender, the date of the person's conviction or commitment, and the date the information was most recently updated. Wis. Stat. § 301.46(4)(b).

¶ 36.  Members of the general public may also receive sex offender registry information. The DOC, a police chief, or a sheriff may disclose sex offender registry information to any person who requests information about a specific registered person.[10] Information may be provided if "in the opinion of the department or the police chief or sheriff, providing the information is necessary to protect the public." Wis. Stat. § 301.46(5).

¶ 37.  The police chief or sheriff has discretion to disclose information about a registered sex offender to a victim, an organization, or to the general public if the police chief or sheriff believes the information is necessary to protect the public.[11] Wis. Stat. § 301.46(2)(e). *This disclosure may be made without any request. Id.* (emphasis added).

¶ 38.  Finally, the DOC is authorized to provide sex offender registration information to anyone who makes an open records request for that information. Wis. Stat. § 301.46(9).

---

[10] The DOC, a police chief or a sheriff may prescribe a particular form and manner of request and may require that the requester state the purpose for the request. Wis. Stat. § 301.46(5)(a)1.

[11] Police chiefs and sheriffs may not disclose information "concerning a child who is required to register under s. 301.45," or "any information concerning a juvenile proceeding" which a registered adult has provided. Wis. Stat. § 301.46(4)(ag) and (5)(c). This information must be provided by the DOC to police chiefs and sheriffs, but otherwise may not be disclosed. *Id.*

¶ 39.    The parties urge different interpretations of Wis. Stat. §§ 301.45 and 301.46. Kaminski asserts that §§ 301.45 and 301.46 occupy the field regarding access to sex offender registry information, by establishing detailed notification and access policies and procedures. He claims that in creating §§ 301.45 and 301.46, the legislature intended to balance the public's interest in safety and protection with the offender's right to privacy, and to limit access to sex offender registration information. He contends that pursuant to this goal, § 301.45(7) requires that all sex offender registration information shall be kept confidential except as provided in § 301.46. Kaminski argues that the legislature intended to restrict notification or access to information to only those persons or entities specified in § 301.46, and gave the general public access only upon request and at the discretion of the police chief or sheriff.

¶ 40.    The State counters that nothing in the language of Wis. Stat. §§ 301.45 and 301.46 demonstrates an intent by the legislature to occupy the field of sex offender notification, or to restrict the authority of the DOC or a probation agent to impose reasonable rules of probation on probationers who are also registered sex offenders.

¶ 41.    This court has determined that Wis. Stat. §§ 301.45 and 301.46 reflect an "intent to protect the public and assist law enforcement" and are "related to community protection." *State v. Bollig*, 2000 WI 6, ¶¶ 21–22, 232 Wis. 2d 561, 605 N.W.2d 199. Mindful of these legislative intentions, we think it unlikely that the legislature intended, by creating §§ 301.45 and 301.46, to prohibit probation agents from requiring actively-supervised convicted sex offenders to disclose limited information to specified persons or narrow cat-

egories of persons such as employers, landlords, neighbors, and new social acquaintances, whom offenders are likely to encounter, perhaps on a daily basis. Such a prohibition would undercut the mission of probation and parole and contradict the legislature's intent of protecting the public. We would find it incongruous for curious strangers to have access to information because the "general public" is listed in the statute, but for unsuspecting next-door neighbors with children not to have the same information because they were not specifically listed by category and were not on alert to make a request.

¶ 42. Kaminski rather overstates the implications of this court's decision in *Bollig*. *Bollig* states that the primary purpose of the sex offender registration statute is to protect the public and assist law enforcement. 232 Wis. 2d 561, ¶ 21. It explains that the DOC convened a Sex Offender Community Notification workgroup to assist legislators in developing balanced community notification legislation—legislation that balanced "community protection with the offender's community reintegration needs." *Id.* at ¶ 22. We noted in *Bollig* that Wis. Stat. § 301.46 "does not automatically grant the public carte blanche access to the information [in the sex offender registry]." *Id.* at ¶ 24. However, this is a far cry from saying that the DOC engineered legislation to curtail the supervisory powers of its own agents and created for sex offenders some right of privacy in information that is fundamentally public record.

¶ 43. Wisconsin Stat. § 301.46 grants both law enforcement and the DOC broad authority to disseminate information to the general public if either determines that such disclosure is necessary to protect

the public. This broad discretion to disclose registry information is evident in Wis. Stat. §§ 301.46(2)(e), 301.46(5)(a), and 301.46(5)(b)4. Section 301.46(2)(e) affords the police chief or sheriff the authority to "provide any of the information to which he or she has access under this subsection. . .*to members of the general public if, in the opinion of the police chief or sheriff, providing that information is necessary to protect the public*." § 301.46(2)(e) (emphasis added).

¶ 44. A number of law enforcement agencies in Wisconsin communities, including the police departments in the cities of Milwaukee, Madison, Waukesha, and Kenosha, have made sex offender information available to the general public by use of Internet sites listing the registered sex offenders residing in the respective communities, and providing extensive information about them.[12]

¶ 45. Additionally, both law enforcement officials and the DOC are authorized to disclose *any* information they deem appropriate about *any* registered person, to *any* person who requests it, if "in the opinion of the DOC or the police chief or sheriff, providing the information is necessary to protect the public." Wis. Stat. § 301.46(5)(a); *see also* Wis. Stat. § 301.45(5)(b)4.

¶ 46. We cannot conclude from the language of Wis. Stat. §§ 301.45 and 301.46 that the legislature, in giving such broad discretion to the DOC to give any information about any sex offender to anyone who

---

[12] The Internet sites maintained by the Milwaukee, Madison, and Waukesha police departments each state that the sex offender registration lists are provided pursuant to Wis. Stat. § 301.46(2m) to protect the public.

The City of Kenosha Police Department's Internet site listing registered persons residing in Kenosha is based on the open records law, rather than on Wis. Stat. § 301.46(2m).

requests it, intended to prohibit the DOC from imposing a rule of probation requiring a convicted sex offender to inform specified persons of his or her status.

¶ 47.   Recently, the legislature amended Wis. Stat. § 301.46 to *broaden* the authority of the DOC to disseminate sex offender information. 1999 Wis. Act 89. The newly created subsection (5n) of § 301.46 requires that the DOC "provide access to information concerning persons registered under s. 301.45 by creating and maintaining an Internet site[13] *and by any other means that the department determines is appropriate*." Wis. Stat. § 301.46(5n) (1999–2000) (emphasis added). The DOC is to provide any person using the Internet site the information to which the person is otherwise entitled under §§ 301.45 and 301.46, and is also authorized to provide any user with "other information that the DOC determines is necessary to protect the public." *Id.*

¶ 48.   While we determined the legislative intent of Wis. Stat. §§ 301.45 and 301.46 in *Bollig*, we did not address whether the legislature intended that the statutes occupy the field regarding sex offender registration notification. 232 Wis. 2d 561, ¶¶ 21–22. Here we must ascertain whether the legislature intended to "supplant[ ] or preempt[ ]" the authority of probation agents to impose rules of probation on probationers. *See Holtzman v. Knott*, 193 Wis. 2d 649, 667, 533 N.W.2d 419 (1995).

¶ 49.   This question requires a broader inquiry than the text of the statutes. Kaminski argues the pol-

---

[13] The DOC Sex Offender Registry Internet site was required by statute to be operational by June 1, 2001. Wis. Stat. § 301.46(5n) (1999–2000). It is accessible at http://public-sor.doc.state.wi.us/static/ (last visited July 3, 2001).

icy of the statutes based upon extrinsic sources. The State wages a similar campaign. Our goal is to discern what the legislature intended. We therefore will examine the history, object, and context of Wisconsin's sex offender registration law.

2. History, Object, and Context

¶ 50. Wisconsin Stat. § 175.45 (1993–94) was the first Wisconsin statute to require persons convicted of certain sex crimes to register with the State. *Bollig*, 232 Wis. 2d 561, ¶ 21. Section 175.45 required a convicted sex offender to provide "information about his or her home address, place of school enrollment, place of employment and employment duties" to the Department of Justice (DOJ). Wis. Stat. § 175.45(2) (1993–94). The DOJ was required to maintain the information. Wis. Stat. § 175.45(7)(a) (1993–94).

¶ 51. At that time, neither Wis. Stat. § 175.45 (1993–94) nor any other statute provided for *any* access to a sex offender's information, or *any* notification of that information. Instead, § 175.45 required the DOJ to "keep the information confidential except as needed for law enforcement purposes." Wis. Stat. § 175.45(7)(a) (1993–94). Section 175.45(6)(b) stated that: "[w]hoever knowingly fails to keep information confidential as required under sub. (7) may be fined not more than $500 or imprisoned for not more than 30 days or both." Wis. Stat. § 175.45(6)(b) (1993–94).

¶ 52. In 1996, the legislature revised and renumbered the sex offender registration system by enacting 1995 Wis. Act 440, creating Wis. Stat. §§ 301.45 and 301.46. *Bollig*, 232 Wis. 2d 561, ¶ 21. The new sex offender registration law transferred the sex offender registry to the DOC, required the DOC to maintain the

sex offender registry information, and provided for extensive access to that information.

¶ 53. As we noted in *Bollig*, the legislative intent behind the creation of Wis. Stat. §§ 301.45 and 301.46 can be gleaned from a proposal found in the Legislative Reference Bureau's drafting file for 1995 Wis. Act 440. 232 Wis. 2d 561, ¶ 22. The proposal, prepared by the Wisconsin Department Of Corrections "Sex Öffender Community Notification workgroup" (DOC workgroup), is entitled *Sex Offender Community Notification Proposed Program Components, Executive Summary and Final Report* (1994) [hereinafter *Final Report*].[14] The DOC workgroup was "formed in response to efforts by legislators to introduce community notification legislation based on a revision and expansion of the then existing registration statute." *Bollig*, 232 Wis. 2d 561, ¶ 22.[15] The DOC workgroup's *Final Report* made recommendations and laid out a framework for the new sex offender registration and notification law. *Final Report, supra.* It recommended expanding the then current sex offender registration

[14] The DOC workgroup consisted of representatives of the DOC, Probation and Parole, the Office of Sex Offender Programs, the DOJ Office of Crime Victim Services, the Wisconsin Chiefs of Police Association, Adult Institutions, Intensive Sanctions, and Program Services, and also had a legislative liaison. Wisconsin Department Of Corrections Sex Offender Community Notification Workgroup, *Sex Offender Community Notification Proposed Program Components, Executive Summary and Final Report* (1994) [hereinafter *Final Report*].

[15] The DOC workgroup's *Final Report* was prepared for Senator Alberta Darling who introduced the bill (1995 S.B. 182), which became 1995 Wis. Act 440, and Representative Lolita Schneiders who co-authored S.B. 182. *Final Report, supra*, at 1; Legislative Reference Bureau Drafting File for 1995 Wis. Act 440, Bill History for 1995 S.B. 182.

law to comply with Title XVII of the 1994 Federal Crime Bill.[16] *Id.* at ii.

¶ 54. The DOC workgroup's goals were to:

[A]nalyze current DOC, local law enforcement, and other state laws/practices related to community notification of sex offenders, and;

[F]ormulate recommendations and/or options to be communicated to the Legislature related to the most effective model for community notification. This model will need to balance community protection with the offender's community re-integration needs.

*Id.* at 1.

¶ 55. A section of the DOC workgroup's *Final Report* summarized the then current notification practices under Wis. Stat. § 175.45 (1993–94). It stated in part that "for cases supervised under a high risk caseload, *probation and parole may provide extended notification within the neighborhood, schools, employers, etc. . . .as deemed appropriate and necessary.*" *Id.* at 3 (emphasis added).

¶ 56. Kaminski contends that the legislature intended to discontinue this practice, as evidenced by language in Wis. Stat. § 301.45(7) stating that: "The

---

[16] Title XVII of the 1994 Federal Crime Bill, also known as the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, conditioned federal funding on whether states enacted sex offender registration and notification laws. 42 U.S.C. § 14071(g)(2)(a) (Supp. 1996). The federal law and similar laws passed in each of the 50 states resulted from "Megan's Law," passed in New Jersey in 1994, requiring community notification of sex offenders residing in any community. *State v. Bollig*, 2000 WI 6, ¶ 19 n.4, 232 Wis. 2d 561, 605 N.W.2d 199.

department shall keep the information confidential except as provided in. . .[§ ] 301.46, [and] except as needed for law enforcement purposes," found in Wis. Stat. § 301.45(7)(a).

¶ 57. We disagree. The 1996 legislation lifted many provisions from the 1993 law. Wisconsin Stat. § 175.45(7)(a) (1993–94) read:

> The department of justice shall maintain information provided under sub. (2). The department shall keep the information confidential except as needed for law enforcement purposes.

¶ 58. Most of this language was carried over to Wis. Stat. § 301.45(7)(a) where it is applied in a different context to a different department.

> The department [of corrections] shall maintain information provided under sub. (2). The department shall keep the information confidential except as provided. . . .

The subsection then uses the word "except" three times, listing numerous statutes. The subsection includes the phrase "except as needed for law enforcement purposes."

¶ 59. In the 1993 law, the DOC and the Department of Health and Social Services were required to share information with the DOJ.[17] Wis. Stat. § 175.45(9) (1993–94). Nothing in the 1993 law prevented the two departments from using their own information in the normal course of business under other statutes.

---

[17] The Department of Health and Social Services was subsequently renamed the Department of Health and Family Services.

¶ 60.  When the law transferred the sex offender registry to the DOC, it did not prevent the DOC from using its own information to carry out its mission in probation and parole.

¶ 61.  The most significant change in the 1996 legislation was that a sex offender registration law became a modified sex offender notification law, expanding access to information. There is no evidence to suggest that the legislature intended to curtail the DOC's ordinary operating procedures.

¶ 62.  During 1993 and 1994, probation and parole officers could notify certain people in a high risk sex offender's neighborhood, as well as schools and employers, about the sex offender. *Final Report, supra,* at 3. In this work, the agents were utilizing their own information.

¶ 63.  "One precept of the DOC workgroup was to build upon these current systems or practices." *Id.* The DOC workgroup's recommended model was to "improve or expand on current practices," and to "provide flexibility to the agency of jurisdiction and law enforcement in order to expand or reduce community notification based on case-by-case factors—leaving discretion to individualize notification strategies." *Id.* at 2.

¶ 64.  Nothing in the *Final Report* or elsewhere in the legislative history of 1995 Wis. Act 440 indicates that by enacting the 1996 revision, the legislature intended to *limit* the ability of probation agents to disclose sex offender information if necessary to supervise clients who were sex offenders. Instead, the legislature pointedly gave the DOC authority to maintain the sex offender information, broad discretion to disclose the information, and broad discretion to write its own rules.

¶ 65. We cannot conclude that in granting the DOC broad authority to notify the general public under certain circumstances, and in expanding notification procedures generally, the legislature intended to usurp probation agents' authority to impose probation rules requiring notification of people in close proximity to a specific sex offender. Such action would run contrary to the goal of "protection of the public from sex offenders," which the DOC workgroup deemed "a paramount governmental interest." *Id.* at i.

¶ 66. Kaminski also points out that Wis. Stat. § 301.46 originally did not specifically provide for any notification of the general public absent a request for information. He notes that the legislature amended § 301.46 in 1997 to authorize the police and sheriff to provide information to the general public even without a request for the information. 1997 Wis. Act 6. Kaminski asserts that when the legislature did not extend this authority to the DOC, the legislature expressed an intention that the DOC not have authority to notify the general public of a registered person's status as a sex offender.

¶ 67. We agree that Wis. Stat. § 301.46 did not originally authorize the DOC to notify the public at large. It does not follow, however, that the legislature intended in enacting 1995 Wis. Act 440 to prohibit a particular probation agent from imposing rules of probation requiring a probationer to inform specified persons of the probationer's status as a sex offender.

¶ 68. It is clear that prior to the enactment of Wis. Stat. §§ 301.45 and 301.46, neither law enforcement nor the Departments of Corrections or Justice was authorized under Wis. Stat. § 175.45 to notify any member of the general public of a registered sex offender's personal information. Yet, prior to 1996 pro-

bation agents could notify certain persons of a client's sex offender status. *Final Report, supra,* at 3. In enacting Wis. Stat. §§ 301.45 and 301.46, the legislature intended to "build upon current systems or practices," *id.* at 3, and to "improve or expand on current practices." *Id.* at 2. The DOC workgroup recommended that "relevant offender information should be made available for the purpose of. . .screening of current or prospective employees or volunteers. . .and to offer the general public greater access to this information for their protection." *Id.* at i.

¶ 69.   We find it unlikely that in enacting 1995 Wis. Act 440, the legislature intended to prohibit the *only* method the DOC *or* law enforcement had of notifying anyone—including the convicted sex offender's employer, landlord, immediate neighbors, or a person with whom the sex offender might begin an intimate relationship—of the convicted sex offender's status, if these persons did not request the information.[18]

¶ 70.   We cannot agree that the legislature intended to prohibit notification of potentially vulnerable persons; nothing in the language of the statutes or in the legislative history supports such a conclusion. Such a conclusion would invalidate the notice in rule 16–3 for persons with whom the offender may become intimate, and would make it difficult for agents to work with potential employers, landlords, social service agencies, and professionals not specifically listed in Wis. Stat. § 301.46, without going through separate law enforcement agencies to convey information about offenders.

---

[18] Law enforcement did not have the specific statutory authority to notify the general public, absent a specific request, until the legislature enacted 1997 Wis. Act 6.

¶ 71.  We conclude instead that when the legislature enacted 1997 Wis. Act 6 it acted on an intent to expand notification and protect the public. It augmented the then current practice of probation agent notification by allowing law enforcement to inform *anyone* in the general public of information regarding the sex offenders in a community, even without a request. This amendment has resulted in wide-scale notification, such as on publicly accessible Internet sites.

¶ 72.  We conclude that the legislature did not intend that Wis. Stat. §§ 301.45 and 301.46 occupy the field of sex offender registry notification and access, and did not intend to prohibit the DOC and probation agents from imposing rules of probation.

¶ 73.  Our conclusion is supported not only by the object, legislative history, and context of the statutes, but also by current practice. On its sex offender registration Internet site, the DOC states that: "Public Safety is the primary objective of sex offender supervision" and the "[o]ffender is not allowed to remain anonymous." Wisconsin Department of Corrections, *Sex Offender Registry Program, Sex Offender Supervision and Rules* (2001), at http://publicsor.doc.state.wi.us/static/rules.html (last visited July 3, 2001).

¶ 74.  The DOC declares on its Internet site that "[s]upervising sex offenders is a multifaceted activity, requiring agents to adopt various roles and to work closely with a variety of other professionals as well as family members, employers and others who routinely interact with the offender." *Id.* It further stresses the need for the "[u]se of personal/community and professional supervision networks to help monitor, modify, and control offender's behavior." *Id.*

¶ 75. "Probation/parole field units bear the onus of locating housing in the community for sex offenders, a time-consuming and frequently frustrating task. Supervision; home visits; *collateral contacts with landlords, employers,* and so forth. . . ." Richard G. Zevitz & Mary Ann Farkas, *Sex Offender Community Notification: Assessing the Impact in Wisconsin* 10 (2000) (study conducted by the National Institute of Justice) (on file at the Wisconsin State Law Library) (emphasis added).

¶ 76. To ensure that a registered sex offender obtains employment and housing, a probation agent might need to interact with the sex offender's prospective employer or landlord and advise that person of the sex offender's status. It is difficult to imagine that a probation/parole officer, required by the dictates of supervising a registered sex offender to make contact with the person's landlord and employer, would be prohibited by the legislature from divulging that the person is a sex offender or requiring the offender to inform his or her landlord or employer of his or her status.

¶ 77. The same reasoning holds true for the person's neighbors or for a person with whom the registered person might become intimate. We do not read Wis. Stat. §§ 301.45 and 301.46 as *reducing* a probation agent's supervisory role for convicted sex offenders.

¶ 78. Clearly a circuit court, the DOC, or a probation agent could impose conditions or rules of probation requiring a probationer who is *not* a registered sex offender to inform his or her employer, landlord, neighbors, or a person with whom the probationer might become intimate, of his or her status. *See* Wis. Stat. §§ 973.09 and 973.10; Wis. Admin. Code § DOC

328.04(3). We do not discern a legislative intent to grant registered sex offenders *more* privacy and *greater* rights than other probationers. As the DOC workgroup stated: "Persons found to have committed a sexual offense have a *reduced* expectation of privacy because of the public's interest in public safety." *Final Report, supra*, at i (emphasis added).

¶ 79. In summary, we find nothing in the language, the legislative history, the object, or the context of Wis. Stat. §§ 301.45 and 301.46 to indicate that the legislature intended in enacting 1995 Wis. Act 440 to prohibit probation agents from imposing rules requiring registered sex offenders to inform specified persons of their status. We conclude that Wis. Stat. §§ 301.45 and 301.46 were not intended to occupy the field of sex offender registration information notification, and do not preclude a probation agent from imposing a rule requiring a probationer to inform others of the probationer's status as a sex offender.

C.  Reasonableness of Neighbor Notification Rule

¶ 80. Having determined that Kaminski's probation agent was not prohibited by Wis. Stat. §§ 301.45 or 301.46 from imposing a rule of probation requiring Kaminski to inform his immediate neighbors of his status as a sex offender, we turn to the reasonableness of the rule in this case.

¶ 81. Kaminski contends that rule 16–25 requiring him to inform his immediate neighbors that he is a convicted sex offender was neither reasonable nor appropriate, but was instead "potentially irresponsible, as well as unreasonable." He asserts that the purpose of Wis. Stat. § 301.46 is to prevent the risk of conflict, violence, or retaliation, and claims that rule

16–25 "invites the type of fear, anger, conflict, humiliation and vigilante retaliation the legislature's notification scheme was designed to discourage." He further argues that rule 16–25 poses an unreasonable danger to a registered person's neighbors, as they necessarily come into contact with the registered person, who is presumed to pose a threat.

¶ 82. We disagree with Kaminski's arguments. The primary purpose of Wis. Stat. § 301.46 is not to protect registered sex offenders—it is to protect the public. *Bollig*, 232 Wis. 2d 561, ¶ 22. The DOC workgroup stated that "[p]ersons found to have committed a sexual offense have a *reduced* expectation of privacy because of the public's interest in public safety" and that "protection of the public from sex offenders is a paramount governmental interest." *Final Report, supra*, at i (emphasis added).

¶ 83. We find that the rule requiring Kaminski to notify his immediate neighbors of his sex offender status was reasonably tailored to further the dual goals of probation, which are "to protect the public from criminal conduct and to help the probationer become a useful member of society." *Wagner v. State*, 89 Wis. 2d 70, 77, 277 N.W.2d 849 (1979). In *Krebs v. Schwarz*, the court of appeals determined that requiring a probationer to inform his or her agent before beginning an intimate relationship was consistent with the goals of probation because it required the probationer to confront and admit his sexually deviant behavior, and would help prevent relapse. 212 Wis. 2d 127, 131, 568 N.W.2d 26 (Ct. App. 1997). Similarly, rule 16–3 served to protect the public by ensuring that a person about to begin an intimate relationship with the probationer would make an informed decision. *See id.* at 132.

¶ 84. The same reasoning applies in this case. Requiring Kaminski to admit to his behavior and status will serve to help his rehabilitation by making him take responsibility for his actions. It will also ensure that his neighbors know Kaminski's status before making any decision regarding their interaction with him. Whether his neighbors want to socialize with Kaminski or avoid him, the legislature intended that the public be informed about sex offenders in their communities and protected from them. *Final Report, supra,* at i.

¶ 85. Finally, rule 16–25 is also narrowly tailored to meet the goals of probation. It does not require Kaminski to inform his neighbors of *all* of his sex offender registration information, only his status as a sex offender. It requires only that he give one piece of the information that is part of the public record, available to anyone in the general public if the police chief or sheriff decides to dispense it, and available from the DOC to *any* person who requests information about Kaminski. Kaminski does not allege that he questioned the wisdom of the rule, that he asked his agent to go with him in notifying his neighbors, or even that he refused to comply with the rule. He does not claim that he thought notifying his immediate neighbors was unreasonable. He instead agreed to and signed the rule, and then decided to ignore it. We cannot conclude that rule 16–25 is unreasonable as applied to Kaminski.

## IV. CONCLUSION

¶ 86. We hold that Wisconsin's sex offender registration statutes, Wis. Stat. §§ 301.45 and 301.46, do not occupy the field in regulating the dissemination of sex offender registration information, and do not

prohibit a probation agent from imposing a rule of probation requiring a probationer to inform the probationer's immediate neighbors of his or her status as a convicted sex offender. We further hold that rule 16–25, requiring Kaminski to notify his immediate neighbors that he is a convicted sex offender, was not unreasonable as applied to Kaminski. We therefore reverse the decision of the court of appeals, and affirm the revocation of Kaminski's probation.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 87.  SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting)*. I confess that I came close to joining the majority opinion in this case. Its explanation of the report and recommendations of the Department of Corrections (DOC) workgroup is very persuasive. Were the DOC workgroup's report and recommendations law, I would have no problem allowing Kaminski's probation agent to require Kaminski to disclose his sex offender status to his immediate neighbors.

¶ 88.   But, of course, our focus is not on what the DOC workgroup recommended to the legislature. Rather, we are asked whether the relevant statutes, Wis. Stat. §§ 301.45 and 301.46 (1997–98), enacted by the legislature, allow a probation agent to require a sex offender to disclose information kept confidential by the statute. If the legislature wanted to incorporate the entirety of the DOC's report and recommendations into the statute governing sex offender registry, it could have done so. Had the legislature done so, this case would not have reached this court.

¶ 89.   Instead, the legislature crafted a detailed and extensive law that expressly sets forth who can release sex offender information, to whom it can be released, and the circumstances under which it can be released. Violations of the statute's requirement that the information be kept confidential are punishable by a fine or imprisonment or both. *See* Wis. Stat. § 301.45(6)(b) (1997–98). The statute does not fully incorporate the DOC workgroup's recommendations. In particular, the exceptions to the statute's requirement that the information be kept confidential do not authorize the probation agent to disclose the confidential information to the offender's immediate neighbors.

¶ 90.   The court of appeals concluded that because the statute plainly prohibits Kaminski's probation agent from disclosing the confidential information to Kaminski's immediate neighbors, the probation officer cannot require Kaminski to do what the probation agent may not do under the statute. *See State ex rel. Kaminski v. Schwarz*, 2000 WI App 159, 238 Wis. 2d 16, 616 N.W.2d 148. I agree with the court of appeals.

¶ 91.   For the reasons set forth by the court of appeals, I dissent.

¶ 92.   I am authorized to state that Justices WILLIAM A. BABLITCH and ANN WALSH BRADLEY join this opinion.